1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8   DEBBIE ANN BAIRD,

9                            Plaintiff,          Case No. C11-1107-JCC-BAT

10            v.                                  **REPORT AND**
                                                 **RECOMMENDATION**
11  MICHAEL J. ASTRUE, Commissioner of
    Social Security,
12
                             Defendant.
13

14          Debbie Ann Baird appeals the final decision of the Commissioner of the Social Security

15  Administration ("Commissioner") which denied her application for Supplemental Security

16  Income ("SSI").  She argues that the Administrative Law Judge ("ALJ") erred in (1) discounting

17  the opinions of her treating and examining physicians, (2) rejecting her hearing testimony, (3)

18  determining whether her impairments met or equaled a listed impairment, (4) assessing her

19  residual functional capacity, and (5) relying on the vocational expert's testimony.  Dkt. 17.  For

20  the reasons set forth below, the Court recommends the Commissioner's decision be

21  **REVERSED** and **REMANDED** for further administrative proceedings.

22                          I.       **FACTUAL AND PROCEDURAL HISTORY**

23          Ms. Baird was born in 1956, and has a high school education.  Tr. 41, 116.  Her past

work includes employment as a delivery driver and a prep cook. Tr. 61, 129. On April 11, 2007, she applied for SSI, alleging disability beginning December 31, 2000. Tr. 116. Her application was denied initially and on reconsideration. Tr. 67-70, 72-73. She requested a hearing which took place on August 31, 2009. Tr. 34-64. On November 17, 2009, the ALJ issued a decision finding Ms. Baird not disabled. Tr. 17-28. Ms. Baird's administrative appeal was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

## II.    THE ALJ'S DECISION

Utilizing the five-step sequential evaluation process,[1] the ALJ made the following findings:

**Step one:** Ms. Baird had not engaged in substantial gainful activity since April 11, 2007, the date her application was filed. Tr. 19.

**Step two:** Ms. Baird had the following severe impairments: history of affective disorder/mood disorder and anxiety disorder. *Id.*

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 20.

**Residual Functional Capacity:** Ms. Baird had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: gets along with others, understands simple instructions, concentrates and perform simple repetitive tasks, responds and adapts to simple or gradual workplace changes and supervision but in a limited public/employee contact setting. Tr. 21.

**Step four:** Ms. Baird could perform her past work as a prep cook. Tr. 27.

**Step five:** Ms. Baird could perform other jobs existing in the national economy and, therefore, was not disabled. Tr. 28.

## III.    DISCUSSION

### A. Evaluation of the Medical Evidence

Ms. Baird argues that the ALJ erred in evaluating the opinions of Wayne Dees, Psy.D.,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1  Natalie L. Nunes, M.D., Rufino Ramos, M.D., Alysa A. Ruddell, Ph.D., Charles Quinci, Ph.D.,

2  Bernadette Thomas, M.D., Eugene Kester, M.D., Deborah Kabisch, ARNP, and Sheila Bartlett,

3  MHP.  Dkt. 17 at 3-15.  The Commissioner disagrees and responds that the ALJ properly

4  evaluated the medical evidence.  Dkt. 21 at 2-19.

5  In general, more weight should be given to the opinion of a treating physician than to a

6  non-treating physician, and more weight to the opinion of an examining physician than to a non-

7  examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

8  contradicted by another physician, a treating or examining physician's opinion may be rejected

9  only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396

10  (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be

11  rejected without "specific and legitimate reasons that are supported by substantial evidence in the

12  record."  *Id*. at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

13  The ALJ may reject physicians' opinions "by setting out a detailed and thorough

14  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15  making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1989) (citing *Magallanes v.*

16  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Rather than merely stating his conclusions, the ALJ

17  "must set forth his own interpretations and explain why they, rather that the doctors', are

18  correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

19  Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74 F.3d

20  967, 970 (9th Cir. 1996).  However, "[s]ince there is a requirement to consider all relevant

21  evidence in an individual's case record," the ALJ's decision "should reflect the consideration of

22  opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical

23  sources' who have seen the claimant in their professional capacity."  SSR 06-03p.  "[T]he

adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).

### 1. Wayne Dees, Psy.D.

Clinical psychologist Wayne Dees, Psy.D., met with Ms. Baird on two occasions in 2006. Tr. 214, 274. On April 20, 2006, Dr. Dees diagnosed Ms. Baird with major depressive disorder, severe, recurrent and nicotine dependence. Tr. 274. He found her mood was moderately depressed, her affect was tearful at times, and she appeared to be in some distress. *Id*. He advised her to get out of the house at least once a day, even if it was only for several minutes, and then to build on that time. *Id*. He encouraged her to exercise more, get out and meet people, and take herself to the grocery store. *Id*. He also encouraged her to say positive things about herself, and to engage in distracting techniques when she begins to feel negative about herself or her life. *Id*. He recommended that she follow-up with him in approximately four weeks. *Id*.

On May 18, 2006, Dr. Dees again diagnosed Ms. Baird with major depressive disorder, severe, recurrent, and nicotine dependence. Tr. 214. Ms. Baird reported that she had "attempted to begin to take walks to increase her exercise, but did not follow through on her plans secondary to depression." *Id*. Dr. Dees found her mood was depressed, her affect was congruent, and she was tearful at time. *Id*. Dr. Dees advised her to walk one-half hour every day (and ask a friend or relative to join her if she lacked motivation), contact a day-care center to inquire about volunteer opportunities, utilize the relaxation and stress management techniques they had

discussed, and not ruminate over past events for more than half an hour.  *Id*.  He recommended that she follow-up with him in two weeks, however, Ms. Baird did not show for her appointment with Dr. Dees on June 5, 2006.  Tr. 214, 267.  No additional treatment notes appear in the record.

The ALJ did not mention Dr. Dees' records in his opinion.  Ms. Baird alleges Dr. Dees' findings show she was experiencing severe depressive symptoms since at least 2006.  Dkt. 17 at 4.  She asserts that the ALJ thus rejected significant probative evidence without explanation.

The ALJ is not required to discuss all evidence presented to him.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)).  The ALJ need only explain why "significant probative evidence has been rejected." *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981).  Here, the ALJ did not reject Dr. Dees' opinion, but found plaintiff had severe affective disorder/mood disorder (i.e., depression).  Tr. 19.  The ALJ was not required to discuss evidence he did not reject, and which was cumulative.  Dr. Dees did not assess any limitations and, therefore, there was no significant probative evidence the ALJ was required to discuss.

Ms. Baird presents nothing more than an assertion that the ALJ erred by failing to mention Dr. Dees' records.  She does not explain how the ALJ's failure to mention these records made the ALJ's evaluation of the evidence deficient or how the records were significant or probative evidence that the ALJ must discuss.  The Court declines to find that the ALJ erred in failing to discuss Dr. Dee's records.

**2.  Natalie L. Nunes, M.D.**

Dr. Nunes has been Ms. Baird's primary care physician for several years.  Tr. 187-285, 483-508.  On May 8, 2006, Dr. Nunes examined Ms. Baird and noted objective findings, such as her mood was down, her affect was blunted, and she appeared tearful.  Tr. 216.  Dr. Nunes

prescribed imipramine for chronic depression with insomnia.  Tr. 216-17.

On March 13, 2007, Dr. Nunes examined Ms. Baird and noted she was anxious, fearful, had flattened affect, and felt hopeless.  Tr. 192.  She diagnosed major depression recurrent, severe, and panic disorder, and prescribed Zoloft and mental health counseling.  Tr. 189, 193. The same day, Dr. Nunes provided an evaluation for the Washington State Department of Social and Health Services ("DSHS"), stating that Ms. Baird's depression and panic disorder caused moderate to marked interference with her ability to communicate and to understand or follow directions.  Tr. 187-93.

On April 17, 2007, Dr. Nunes found little improvement from her prior visit, noting Ms. Baird had flat affect with decreased eye contact, minimal enjoyment of daily activities, mood swings, and lack of energy.  Tr. 204.  Dr. Nunes increased Ms. Baird's Zoloft dosage.  *Id.*

On February 25, 2008, Dr. Nunes completed another DSHS evaluation and assessed marked limitations due to depression.  Tr. 493-96.  She found no unusual anxiety or evidence of depression.  Tr. 491.  She noted that Zoloft was helping Ms. Baird's anxiety, but not her depression, and planned to change her medication from Zoloft to Celexa.  Tr. 491, 493.

On July 17, 2008, Dr. Nunes examined Ms. Baird and completed another DSHS evaluation.  Tr. 483-89.  She rated Ms. Baird's depression as marked to severe, indicating significant interference with her ability to perform one or more basic work activities.  Tr. 485. On physical examination, Dr. Nunes noted Ms. Baird was within normal limits, except she had pain in her elbows and hands, but had full range of motion.  Tr. 484.  She limited Ms. Baird to medium work, which means the ability to lift 50 pounds maximum and frequently lift and/or carry up to 25 pounds.  Tr. 485.

The ALJ assigned "limited weight" to Dr. Nunes' opinion because it was not supported

by the examination signs and findings, but appeared to have been based "solely" on Ms. Baird's subjective complaints.  Tr. 26.  The ALJ also discounted Dr. Nunes' opinion as to Ms. Baird's mental functioning because she was a family medicine physician, not a mental health specialist. *Id*.  The ALJ further found Dr. Nunes' limitation to medium work was inconsistent with her physical examination findings which showed all systems were within normal limits, except she had pain in her elbows and hands, but full range of motion.  *Id*.

The Commissioner concedes that the ALJ erred in disregarding Dr. Nunes' opinion because she is not a mental health specialist.  Dkt. 21 at 6-7.  A treating physician's opinion regarding the mental functioning of a patient constitutes competent psychiatric evidence and may not be discredited on the ground that the physician is not a mental health specialist.  *See Lester*, 81 F.3d at 833 (holding that if a treating physician provided treatment for the claimant's psychiatric impairment, his opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he was not a board certified psychiatrist).  Dr. Nunes provided mental health treatment, and prescribed psychotropic medication and mental health counseling.  Accordingly, Dr. Nunes' opinion constitutes competent psychiatric evidence and the ALJ erred by discounting her opinion on the ground that she is not a mental health specialist.

The ALJ also erred in discounting Dr. Nunes' opinion because it was not supported by her examination findings and appeared to have been based solely on Ms. Baird's subjective complaints.  Tr. 26.  An ALJ may disregard a treating physician's opinion if it is based "'to a large extent'" on a claimant's self-reports that have been "'properly discounted'" as incredible. *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).  Here, however, there is no indication that Dr. Nunes relied "solely" on Ms. Baird's subjective complaints.  Rather, Dr. Nunes conducted mental status

examinations and made clinical observations regarding Ms. Baird's appearance, attitude, behavior, mood, affect, thought content, and cognition.  She found Ms. Baird was anxious, fearful, hopeless, moody, tearful, and had down mood, blunted and flattened affect, and decreased eye contact.  Tr. 192, 199, 204, 206-07, 216, 227, 229, 251, 271, 488, 503.  Thus, there is evidence Dr. Nunes rendered her opinion based on her clinical examination, rather than solely on Ms. Baird's subjective complaints.

Although the Commissioner offers several reasons that could justify rejecting Dr. Nunes' opinion (Dkt. 21 at 7), the fact remains that these were not the reasons cited by the ALJ.  The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Finally, the ALJ erred in disregarding Dr. Nunes' opinion because it was inconsistent with her finding that all Ms. Baird's physical systems were within normal limits, except her elbow and shoulder, which had full range of motion.  Tr. 26.  Dr. Nunes found Ms. Baird had pain in her elbow and hands at times which limited her ability to lift more than 50 pounds and lift and/or carry more than 25 pounds.  Tr. 484-85.  The fact that Ms. Baird had full range of motion is not inconsistent with a limitation to lifting and carrying due to elbow and hand pain.  The ALJ erred in discounting Dr. Nunes' opinion on this basis.

Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law.  *Lester*, 81 F.3d at 834.  However, courts retain flexibility in applying the credit as true theory.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).  Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further determinations.

*Id.* Because it is not clear that the ALJ would be required to find Ms. Baird disabled if the evidence were credited, this case should be remanded for further proceedings.

### 3. Rufino Ramos, M.D.

On July 27, 2006, Dr. Ramos conducted a psychiatric evaluation of Ms. Baird. Tr. 286-88. Ms. Baird's chief complaints were being easily startled, difficulty falling asleep, mind racing, recurring nightmares, and feeling hopeless and worthless due to a history of physical and sexual abuse. Tr. 22, 286. Dr. Ramos diagnosed Ms. Baird with posttraumatic stress disorder ("PTSD"), major depressive disorder, and generalized anxiety disorder, and rated her Global Assessment of Functioning ("GAF") score at 30 to 40.[3] Tr. 288. He opined that Ms. Baird's prognosis was "guarded," and that she was "unlikely capable of engaging in normal work situations." *Id.* He indicated she would need to be stabilized before she could engage in "meaningful life situations." *Id.*

The ALJ gave little weight to Dr. Ramos' opinion, finding it was inconsistent with the examination signs and findings contained in his evaluation notes. Tr. 23-24. For example, the ALJ noted that Dr. Ramos observed that Ms. Baird was appropriately dressed for the weather and situation, cooperative and pleasant. Tr. 23, 287. Although she was tearful at times, her speech was normal in tone, rate and rhythm, her verbal responses were coherent and appropriate,

---

[3] A GAF score is a subjective determination based on a scale of 0 to 100 of "the clinician's judgment of the individual's overall level of functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 21-30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." *Id.* at 34. A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.*

and her stream of mental activity was spontaneous. *Id*. Her thought content revealed no delusional, suicidal, or homicidal ideas. *Id*. She was oriented to time, place, and person, and had a good working memory of past events. *Id*. She was able to recall three out of three objects after five minutes, repeat five digits forwards and backwards, perform serial threes, and spell "world" forward and backward without difficulty. Tr. 23-24, 287. She was able to follow three-step commands, and did not have any difficulty following the conversation. Tr. 24, 287. She was capable of managing her own funds. Tr. 24, 288. Although Dr. Ramos opined that Ms. Baird was incapable of working, "her mental status was fairly within normal limits." Tr. 24, 287-88.

Contrary to Ms. Baird's contention, the ALJ gave specific and legitimate reasons for disregarding Dr. Ramos' opinion. As the ALJ noted, Dr. Ramos' opinion that Ms. Baird was unable to work was inconsistent with the mental status examination findings which the ALJ noted were within normal limits. The ALJ need not accept the opinion of a physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Further, Dr. Ramos' statement that Ms. Baird was unable to work is not binding on the ALJ. 8 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled'"); *Boardman v. Astrue*, 286 Fed. App'x 397, 399 (9th Cir. 2008) ("ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance"). The ALJ did not err in discounting Dr. Ramos' opinion.

The ALJ also found Dr. Ramos' opinion was "inconsistent with the records as a whole, including his own evaluation." Tr. 24. The ALJ did not identify the particular records to which

he was referring, however. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999). Nevertheless, because the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Mr. Ramos' opinion, the error can be deemed harmless. *Carmickle*, 533 F.3d at 1162-63.

### 4. Alysa A. Ruddell, Ph.D.

Dr. Ruddell conducted a DSHS psychological evaluation of Ms. Baird on February 7, 2007. Tr. 179-82. She diagnosed Ms. Baird with PTSD, and assigned her a GAF score of 45, with a high in the past year of 55.[4] Dr. Ruddell opined that Ms. Baird had moderate and marked limitations in several areas of functioning. Tr. 181.

The ALJ assigned limited to weight to Dr. Ruddell's opinion, finding it was inconsistent with her own evaluation, and prior examinations, and Ms. Baird's treatment history. Tr. 24-25. Specifically, the ALJ noted that although Dr. Ruddell opined Ms. Baird was markedly limited in her ability to exercise judgment and make decisions, she indicated Ms. Baird was able to care for children and the elderly. Tr. 24, 181. Dr. Ruddell also opined that Ms. Baird was moderately limited in her ability to understand, remember, and follow simple instructions, but found her digit span was four forwards (within normal limits) and three backwards (borderline or deficient). *Id.* In addition, Dr. Ruddell opined that Ms. Baird was moderately limited in her ability to attend to hygiene and grooming without reminders or assistance; and markedly limited

---

[4] A GAF score of 41-50, indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV, *supra* n.3, at 34. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

in her ability to maintain a daily routine of eating or sleeping; perform household chores; care for others (children, the elderly, and pets), and access and utilize support systems (friends, family, and social agencies). 24, 183. However, the ALJ pointed out that Ms. Baird reported no problems with personal care, and Dr. Ruddell found "[n]o problems noted with hygiene or dress today," and "well groomed." Tr. 24, 140, 181, 183. Contrary to Dr. Ruddell's opinion that Ms. Baird was moderately limited in her ability to access and utilize support systems, the ALJ noted Ms. Baird utilized DSHS, the Social Security Administration, and friends to assist her. Tr. 24.

Plaintiff contends that Dr. Ruddell's opinion was consistent with other clinical findings. However, the ALJ properly pointed to several discrepancies between Dr. Ruddell's assessment of limitations and her own evaluation and other record evidence. An ALJ may give less weight to a doctor's opinion that is inconsistent with the doctor's own clinical notes, recorded observations, and other opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). It is the ALJ's province to resolve conflicts and ambiguity in the medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Often, there may be more than one rational interpretation of the evidence. Thus, if the ALJ's interpretation is supported by substantial evidence, it must be upheld. The ALJ provided specific and legitimate reasons supported by substantial evidence for assigning limited weight to Dr. Ruddell's opinion.

### 5. Charles Quinci Ph.D.

On March 14, 2008, Dr. Quinci performed a DSHS evaluation of Ms. Baird. Tr. 518-26. He diagnosed her with major depression (marked) and anxiety disorder with PTSD traits, and assigned her a GAF score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. DSM-IV, *supra* n.3, at 34. He opined that Ms. Baird was moderately limited in several areas of functioning and markedly limited in her ability to respond

appropriately to and tolerate the pressure of a normal work setting. Tr. 520. He indicated that

her diagnosed conditions were treatable with counseling, medication, and vocational training,

and that the severity of her symptoms was estimated to last a maximum of six months. Tr. 521.

Dr. Quinci stated,

> cognitive functions are impaired by depression [and] anxiety, concentration, recent memory, attention span are poor. Socially, presents poorly with crying & anxiety, & is extremely withdrawn, isolated from others. DLS [daily living skills] are poor 'no energy'. Self esteem & ego strength are poor. She is unable to perform tasks at a competitive pace & likely has difficulty retaining new information. Work [history] is limited but with successful [treatment] would be good candidate for vocat[ional] training.

Tr. 526.

The ALJ rejected Dr. Quinci's opinion because it was not supported by any clinical

findings, and appeared to have been primarily based on Ms. Baird's subjective complaints. Tr.

25. The ALJ noted that although Dr. Quinci opined Ms. Baird was unable to perform tasks at a

competitive pace and would likely have difficulty retaining new information, his examination

findings showed that her immediate and remote memory were intact, and her abstract reasoning,

fund of knowledge, judgment and insight, and ability to follow directions were fair. Tr. 25, 524.

Contrary to the ALJ's conclusion, Dr. Quinci's opinion that Ms. Baird was unable to

perform tasks at a competitive pace and would likely have difficulty retaining new information

was supported by his clinical findings that Ms. Baird's recent memory was moderately impaired

and her cognitive functioning (i.e., concentration and attention span) was slow. Tr. 524, 526.

Although Dr. Quinci opined that the severity of her symptoms would last a maximum of six

months, and she would be a good candidate for vocational training, his opinion was contingent

upon her completion of successful treatment. *Id*. There is no indication Ms. Baird has

completed successful treatment. Substantial evidence does not support the ALJ's reasons for

1    discounting Dr. Quinci's opinion.  On remand, the ALJ should reevaluate Dr. Quinci's opinion.

2    **6. Bernadette A. Thomas, M.D.**

3    In May 2009, treating physician Dr. Thomas examined Ms. Baird for the first time and

4    completed a DSHS evaluation.  Tr. 477-82.  She diagnosed Ms. Baird with depression and

5    anxiety disorder and opined Ms. Baird was markedly limited in her ability to stand,

6    communicate, understand and follow directions.  Tr. 479.  She noted that Ms. Baird was

7    improving with psychotherapy and antidepressant medication, and recommended continuing

8    both forms of treatment.  Tr. 482.  She indicated Ms. Baird was able to participate in pre-

9    employment activities such as job search or employment classes.  Tr. 480.  Dr. Thomas also

10   opined Ms. Baird was limited to sedentary work,[5] however she indicated Ms. Baird's physical

11   systems were all within normal limits.  Tr. 478-79.

12   The ALJ considered the opinion of Dr. Thomas, but found "the opinion was not

13   supported by the essentially negative examining signs and findings contained in the physician's

14   examination notes, nor are the opinions supported by the claimant's medical treatment record."

15   Tr. 26.  The ALJ noted that although Dr. Thomas opined Ms. Baird was limited to sedentary

16   work, she indicated that her physical systems were all within normal limits.  Tr. 26, 478-79.  The

17   ALJ also noted that Dr. Thomas stated Ms. Baird had been compliant with therapy and had

18   improved.  Tr. 26, 478, 481-82.  The ALJ found Dr. Thomas' "opinion was inconsistent with the

19   other opinion evidence in the record [sic] with is discussed within."  Tr. 26.

20   The ALJ is correct that there is an inconsistency between Dr. Thomas' DSHS opinion

21   and her treatment records regarding Ms. Baird's lifting and carrying ability.  The treatment

22   _____

23   [5] "Sedentary work means the ability to lift 10 pounds maximum and frequently lift and/or carry
     such articles as files and small tools.  A sedentary job may require sitting, walking and standing
     for brief periods."  Tr. 479.

records do not indicate Ms. Baird was limited to lifting 10 pounds maximum and frequently lifting and/or carrying articles such as files and small tools. Tr. 481. Hence, it was correct for the ALJ to reject the portion of Dr. Thomas' opinion regarding a limitation to sedentary work.

However, the ALJ erred in finding Dr. Thomas' DSHS opinion regarding Ms. Baird's mental limitations was not supported by her examination findings, and with Ms. Baird's medical treatment history. Tr. 26. Dr. Thomas noted,

> She is also experiencing depressed mood, insomnia, hypersomnia, fatigue or loss of energy, feelings of worthlessness, lack of appetite, lack of concentration/interest, low self esteem, domestic violence, history of child abuse. Pertinent negatives include diminished ability to concentrate, recurrent suicidal ideation, feeling of impend. doom, manic episodes, nausea/vomiting, social phobia, suicidal ideation.

Tr. 481. The fact that Dr. Thomas found Ms. Baird's symptoms had improved with psychotherapy and antidepressant medication does not necessarily indicate she no longer had any work-related functional limitations. As discussed above, Dr. Nunes also found Ms. Baird was markedly limited in several work-related activities. Dr. Nunes' mental status exams and clinical observations showed Ms. Baird was anxious, fearful, hopeless, moody, tearful, and had down mood, blunted and flattened affect, and decreased eye contact. Tr. 192, 199, 204, 206-07, 216, 227, 229, 251, 271, 488, 503. Thus, the ALJ erred in finding Dr. Thomas' opinion was inconsistent with her examination notes and with Ms. Baird's medical treatment history.

The ALJ also stated that Dr. Thomas' opinion was inconsistent with "other opinion evidence in the record." Tr. 26. The ALJ did not identify the particular opinion evidence he was referring, however. "[C]onclusory reasons will not justify the ALJ's rejection of medical opinion." *Regennitter*, 166 F.3d at 1299.

For these reasons, substantial evidence does not support the ALJ's reasons for rejecting Dr. Thomas' opinion regarding Ms. Baird's mental limitations. Although the ALJ erred, the

1   Court cannot say it is clear the ALJ would be required to award benefits if the evidence accepted

2   was credited.  As such, it is appropriate to remand the matter for further determinations.

3       **7.  Deborah Kabisch, ARNP, and Sheila Bartlett, MA, MHP**

4       Ms. Baird argues that the ALJ failed to properly evaluate the opinions of her mental

5   health counselors Sheila Bartlett, MA, MHP, and Deborah Kabisch, ARNP.  Under the

6   regulations, mental health counselors are considered "other sources," not "acceptable medical

7   sources."  20 C.F.R. § 404.1513; SSR 06-03p.  Accordingly, the ALJ could reject their opinions

8   by providing germane reasons.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

9       In August 2008, Ms. Bartlett and Ms. Kabisch completed a DSHS psychological

10  evaluation of Ms. Baird.  Tr. 514-17.  They diagnosed major depressive disorder, recurrent,

11  severe, without psychotic features.  Tr. 515.  They opined Ms. Baird had only mild limitations in

12  cognitive factors.  Tr. 516.  They found marked limitations in her ability to respond appropriately

13  to and tolerate the pressure and expectations of a normal work setting, and moderate limitations

14  in her ability to interact appropriately with coworkers, supervisors, and the public.  *Id*.  They

15  indicated their opinion was based on "client report and therapist observation."  *Id*.  They stated

16  that "[a]nti-depressants will help with mood stabilization, and sleep medication will help with

17  anxiety and concentration, all of which will improve her ability to perform on the job."  *Id*.

18      In May 2009, nine months later, Ms. Bartlett and Ms. Kabisch completed another DSHS

19  psychological evaluation of Ms. Baird.  Tr. 509-13.  They diagnosed major depressive disorder,

20  recurrent, severe, without psychotic features, and anxiety disorder.  Tr. 510.  They opined Ms.

21  Baird had moderate to severe cognitive limitations, including severe limitations in her ability to

22  exercise judgment and make decisions, marked limitations in her ability to learn new tasks, and

23  moderate limitations in her ability understand, remember, and follow simple and complex

instructions.  Tr. 511.  In addition, they opined Ms. Baird had moderate to severe social limitations, including severe limitations in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting, marked limitations in her ability to interact appropriately with coworkers, supervisors, and the public, and moderate limitations in her ability to control physical movements and maintain appropriate behavior.  *Id.*

The ALJ rejected their opinions stating, "Neither opinion was based on clinical findings only subjective complaints and subjective observations.  Also, their opinions are inconsistent with the claimant's conservative medical treatment and with the claimant's reported daily activities."  Tr. 27.  The Commissioner asserts that the ALJ only needed to provide one germane reason for giving little weight to the opinions of other medical sources.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  However, the ALJ failed to provide any germane reasons for discounting their opinions.

First, the ALJ stated that "[n]either opinion was based on clinical findings only subjective complaints and subjective observations."  Tr. 27.  This is inaccurate.  Their opinions were based not only on subjective complaints and observations, but also on mental status examination findings which showed objective signs and symptoms of Ms. Baird's functional limitations.  Tr. 511 ("Client demonstrates difficulty with concentration and decision-making . . ."), 513, 560.  The ALJ erred in finding their opinions were not based on clinical findings.

Second, the ALJ found "their opinions are inconsistent with the claimant's conservative medical treatment."  Tr. 27.  The Commissioner argues conservative treatment can be "sufficient to discount a claimant's testimony regarding the severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (discounting claimant's subjective pain complaints where evidence showed physical ailments were treated with over-the-counter pain medication).

However, the record shows Ms. Baird's mental impairments were treated with prescription medications and biweekly therapy sessions. Tr. 481, 487, 489, 490, 491, 497, 498, 501, 502, 503, 527-62. Thus, the Court cannot conclude that plaintiff's treatment was conservative when viewed on the record. Accordingly, this is not a germane reason to discount their opinions.

Third, the ALJ stated that their opinions were inconsistent with the Ms. Baird's daily activities. Tr. 27. The ALJ noted that Ms. Baird reported in an Adult Function Report she had no problems with personal care, nor did she require reminders to take care of her personal needs and grooming. Tr. 20, 22, 140-41. She also reported to Ms. Bartlett and Ms. Kabisch that she had no limitations in her ability to care for herself, including personal hygiene and appearance. Tr. 22, 516. She stated she can perform housework, such as laundry and vacuuming, prepare meals, and drive without restrictions. Tr. 22, 141-42. It is unclear how these reported daily activities are contrary to Ms. Bartlett and Ms. Kabisch's opinions. On remand, the ALJ must provide germane reasons, if they exist, for rejecting Ms. Bartlett and Ms. Kabisch's opinions.

### 8. Eugene Kester, M.D.

State agency medical consultant Dr. Kester reviewed the record and opined that Ms. Baird retained the ability "to remember, understand and complete non-complex (simple) instructions and repetitive tasks; may work best with superficial public but could tolerate co-workers (gets along with others and supervision but in a limited public/employee contact setting); could adjust to simple or gradual changes and may have some anxiety driving to new areas (responds to simple or gradual workplace changes)." Tr. 24, 289-305. The ALJ assigned Dr. Kester's opinion great weight, finding his opinion was "most consistent with the medical record as a whole and the testimony of the claimant." Tr. 24.

Ms. Baird contends that the ALJ erred in relying solely on the opinion of the

nonexamining physician over the contradictory assessments of her treating and examining physicians. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)). However, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews*, 53 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 752).

Because the ALJ rejected the opinions of every treating and examining physician, and because the ALJ provided no explanation for his view that Dr. Kester's opinion was most consistent with the medical record as a whole, the Court finds the ALJ erred in relying on Dr. Kester's assessment alone. On remand, the ALJ must reevaluate the opinion of Dr. Kester along with the opinions of Dr. Nunes, Dr. Quinci, Dr. Thomas, Ms. Bartlett, and Ms. Kabisch.

**B. Credibility of Ms. Baird's Testimony**

According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 23. Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. After re-evaluating the medical evidence, the ALJ should reassess Ms. Baird's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

**C. Step Three**

At step three of the sequential evaluation process, the Commissioner must determine whether the claimant's "severe" impairments, individually or in combination, meet or equal an Appendix 1 Medical Listing and are "presumptively" disabling. 20 CFR § 404.1520(d), 416.920(d). At step two of the sequential evaluation process, the ALJ found that plaintiff has severe mental impairments of affective disorder/mood disorder and anxiety disorder. Tr. 19. These impairments correlate to listings 12.04 for affective disorders, and 12.06 for anxiety disorders. 20 CFR 404 Subpart P, Appendix 1, 12.04 and 12.06. At step three, the ALJ found that none of plaintiff's mental impairments meet or equal any listed impairment. AR at 20-21.

Ms. Baird asserts that the ALJ erred in finding she did not meet Listing 12.04C. Dkt. No. 17 at 20. She argues that although the ALJ stated that "[t]here is no evidence that a minimal increase in mental demands or a change in the environment would be predicted to cause the claimant to decompensate," Tr. 21, that conclusion is incorrect. She also contends the ALJ failed

to adequately explain why she did not meet Listing 12.04B, "as Baird has markedly impaired social functioning and markedly impaired concentration, persistence, or pace." *Id.*

Whether the ALJ erred by failing to find a 12.04 Listing depends upon the ALJ's evaluation of the medical evidence offered by Dr. Nunes, Dr. Quinci, Dr. Thomas, Ms. Bartlett, Ms. Kabisch, and Dr. Kester. On remand, the ALJ should reevaluate plaintiff's mental impairments and in that process consider whether plaintiff meets the criteria of Listing 12.04.

**D. Residual Functional Capacity Assessment**

As discussed above, the ALJ erred in his assessment of the medical evidence requiring remand. Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will reevaluate Ms. Baird's RFC.

**E. Vocational Expert's Testimony**

Finally, Ms. Baird argues that the ALJ erred in finding she was able to perform her past work as a prep cook, and the jobs of janitor and cleaner II, because the hypothetical he posed to the vocational expert ("VE") did not include all of her limitations. Because the Court recommends remand for further consideration of the medical evidence and the RFC, the ALJ will necessarily have to conduct a new step four and step five analysis that incorporates any changes in Ms. Baird's RFC. If the ALJ's RFC assessment is revised, the ALJ will also call a VE to testify about jobs that may exist with a properly framed hypothetical that incorporates all of Ms. Baird's limitations.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should (1) reevaluate the medical opinions of Dr. Nunes, Dr. Quinci, Dr. Thomas, Ms.

Bartlett, Ms. Kabisch, and Mr. Kester, (2) reevaluate Ms. Baird's testimony, (3) consider whether Ms. Baird's mental impairments meet or equal Listing 12.04, and (4) reevaluate, as necessary, Ms. Baird's RFC before proceeding to steps four and five. A proposed order accompanies this Report and Recommendation.

Objections, if any, to this Report and Recommendation must be filed and served no later than **April 17, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on April 20, 2012. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 3rd day of April, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge